Caitlin Shortell Alaska Bar # 0405027
310 K Street Suite 200
Anchorage, Alaska 99501
Telephone: (907) 272-8181
Facsimile: (888) 979-6148
caitlin@caitlinshortell.com

Counsel for Amanda Macomber

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

AMANDA MACOMBER,

                    Plaintiff,

   vs.

YUPIIT SCHOOL DISTRICT, KIM
LANGTON in his individual and
official capacity as Superintendent of
the Yupiit School District, PEGGIE
PRICE, in her individual and official
capacity as Principal of Akiachak
School, DIANE GEORGE in her
individual and official capacity as
Assistant Superintendent of Yupiit
School District, COLONEL JAMES
COCKRELL, in his official capacity
as Director of the Alaska State
Troopers, STERLING PEELE, in his
official capacity as an Alaska State
Trooper,

                    Defendants.

Case No. 3:15-cv-

## COMPLAINT AND JURY DEMAND

*This cause of action arises from Defendant Yupiit School District and its officials'
deliberate indifference in response to sexual harassment and sexual assault on a female*

*teacher in school-provided housing in the rural village of Akiachak in the Yupiit School District in Southwestern Alaska. Defendants Yupiit, Langdon, Price, and George's failures to secure Plaintiff's employer-provided housing, to promptly and appropriately investigate and respond to the sexual harassment subjected Plaintiff ongoing sexual harassment, sexual assault, and serious physical and emotional injuries, effectively denying her the ability to continue her employment as a teacher at Akiachak School. This action against Yupiit School District and its officials alleges violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682(a), 42 U.S.C. § 1983; 29 U.S.C. § 2615(a); negligence, gross negligence, and negligent infliction of emotional distress.*

*This is also a lawsuit for declaratory and injunctive relief against the Alaska State Troopers Director Colonel James Cockrell, and Alaska State Trooper Sterling Peele, who in their official capacities, were responsible for setting and implementing policy as to investigation of crime in the state of Alaska, who failed to investigate Macomber's sexual assault, and who took Macomber's personal bodily fluid and DNA evidence, and failed to submit those samples for testing. Plaintiff has suffered a violation of her rights under the United States Constitution. This action alleges violation of 42 U.S.C. § 1983.*

Plaintiff Amanda Macomber, by and through her attorney, hereby files the following complaint against Defendants as captioned above.

## I.     JURISDICTION AND VENUE

1.     The United States District Court for the District of Alaska has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. Plaintiff brings this action to redress discrimination in employment prohibited by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682(a), the denial of equal protection and due process of the laws under the Fourteenth Amendment to the U.S. Constitution under 42 U.S.C. § 1983, negligence, gross negligence, and negligent infliction of emotional distress, as more fully set forth herein.

2.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

3.     This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

4.     Plaintiff brings this action against the Yupiit School District and its officials in their individual and official capacities to redress discrimination in employment prohibited by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682(a), the denial of equal protection and due process of the laws under the Fourteenth Amendment to the U.S. Constitution under 42 U.S.C. § 1983, violation of 29 U.S.C. § 2615(a), negligence, gross negligence, and negligent infliction of emotional distress, as more fully set forth herein. Plaintiff also brings this action against Colonel James Cockrell, Director of the Alaska State Troopers and Trooper Sterling Peele, in their official capacities for declaratory and injunctive relief under 42 U.S.C. § 1983.

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
CASE NO.
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 3 of 42

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1392(b), since all defendants reside or resided in this District and the events giving rise to the claims occurred in this District.

## II.     THE PARTIES

5.     Plaintiff Amanda Macomber ("Macomber") is female and 30 years old. Macomber is a school teacher who worked for the Akiachak School in the Yupiit School District from Fall, 2011 to January 7, 2014. Macomber was subjected to discrimination and harassment in her employment leading up to a sexual assault in her School District-provided housing in Akiachak on January 7, 2014. Macomber submitted her personal bodily fluid and DNA evidence from herself and her assailant to the Alaska State Troopers. Macomber now resides in Fairbanks, Alaska.

6.     Yupiit School District ("Yupiit") is a school district in Southwestern Alaska comprised of the villages of Akiachak, Akiak, and Tuluksak. Defendant Yupiit School District was Ms. Macomber's employer and provided rental housing to Ms. Macomber in Akiachak. The Defendant School District is a public educational institution located in the village of Akiachak, State of Alaska.

7.     Kim Langton ("Langton") was the Assistant Superintendent of the Yupiit School District from 2011 to 2012, at which point he became the Acting Superintendent of the Yupiit School District. At all material times, the Superintendent was an agent and employee of Defendant School District, acting or failing to act within the scope, course, and authority of

his employment and his employer. Langton is now retired from employment with Yupiit and is a resident of Utah. Kim Langton is sued in his individual and official capacities.

8.      Peggie Price ("Price") was the Principal of Akiachak School at all times material to this matter. At all material times, the Principal was an agent and employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer. Price is sued in her individual and official capacities.

9.      Diane George ("George"), was the Assistant Superintendant of the Yupiit School District. At all material times, the Assistant Superintendent was an agent and employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer. George is sued in her individual and official capacities.

10.    Alaska State Trooper Sterling Peele is the officer who investigated Plaintiff's sexual assault and who failed to submit the rape kit and DNA evidence collected from Plaintiff for testing to the Alaska Crime Lab. Peele is being sued in his official capacity.

12.    Colonel James Cockrell is the Director of the Alaska State Troopers and thus is responsible for enforcement of the policies with regard to the Alaska State Troopers' priority and protocol in investigation of crimes including submission of DNA for testing. Cockrell is being sued in his official capacity.

### III.      APPLICABLE LAW AND POLICY

13.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) states that

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefit of, or be subjected to discrimination

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
CASE NO.
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 5 of 42

under any education program or activity receiving Federal financial assistance…

14.    Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106.

15.    34 C.F.R. § 106.8(b) provides:

…A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action that would be prohibited by this part.

16.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds violates Title IX and is subject to a private damages action, where the recipient is "deliberately indifferent to known acts of teacher-student discrimination."

17.    In *Davis v. Monroe County Board of Education*[1], the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher. *Davis* held that a complainant may prevail in a Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is

a)    deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and

b)    the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims to access to the educational opportunities or benefits provided by the school. *Davis*, 526 U.S. at 1669-76.

18.    In *North Haven Board v. Bell*, the United States Supreme Court ruled that Title IX prohibits federally funded educational institutions from discrimination based on sex in

---

[1] 526 U.S. 629 (1999).
[2] 456 U.S. 512 (1982).

AMANDA MACOMBER V. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER V. YUPIIT SCHOOL DISTRICT, ET AL
CASE NO.
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 6 of 42

employment.[2] In *Meritor Savings Bank v. Vinson*, the United States Supreme Court held that sexual harassment is sex discrimination.[3]

19.     The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." [4]

20.     The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."[5]

21.     The Yupiit School Board adopted Policy 0410. That policy states as follows:

> The School Board is committed to equal opportunity for all individuals in education. District programs and activities shall be free from discrimination based on age, gender, race, color, religion, national origin, ethnic group, marital or parental status, physical or mental disability or any other unlawful consideration. The Board shall promote programs which ensure that discriminatory practices are eliminated in all district activities.

22.     The Yupiit School Board also adopted Policy 1312.3, which states as follows:

> The School Board recognizes that the district has primary responsibility for ensuring that it complies with State and Federal laws and regulations concerning educational programs. The Superintendent or Principal shall establish procedures to investigate and seek to resolve complaints alleging unlawful discrimination related to educational programs and activities…. The Board prohibits retaliation in any form for the filing of a complaint, the reporting of instances of discrimination, or for participation in complaint procedures[6].

---

[2] 456 U.S. 512 (1982).
[3] 477 U.S. 57 (1986),
[4] U.S. Const., Amend. IV.
[5] U.S. Const., Amend.XIV, Sec. 1
[6] Yupiit School Board Policy 1312.3

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
CASE NO.
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 7 of 42

23.     29 U.S.C. §2615(a) prohibits the denial of or interference with employees'

rights to Family Medical Leave, providing, in pertinent part: "It shall be unlawful

for any employer to interfere with, restrain, or deny the exercise of or the attempt

to exercise, any right provided under this subchapter."

## IV.     ALLEGATIONS COMMON TO ALL DEFENDANTS

24.     At all material times, the Yupiit School District was receiving federal funding, as

contemplated by Title IX, 20 U.S.C. § 1681, *et seq*.

25.     The School District implemented and executed policies and customs in regard to the

events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law

rights.

26.     The School District is responsible for ensuring that all of its employees are properly

trained and supervised to perform their jobs.

27.     The School District is responsible for the acts and omissions of its employees.

28.     At the time of the attack that gave rise to the events complained of herein, Amanda

Macomber was a teacher at Akiachak School in the Yupiit School District.

29.     Akiachak is a village of 627 residents, according to the 2010 Census. It is located in

the Yukon-Kuskokwim Delta on the Kuskokwim River.  It is 95% American Indian and

Alaskan Native. Approximately 3.51% of the residents are White, most of which are Yupiit

School District employees. It is not on the road system. Housing in Akiachak for teachers is

limited to approximately 15 units provided by the School District. All teachers in the District

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
CASE NO.
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 8 of 42

are the tenants of the School District except those who are married to a local community member.

30.     According to the Alaska Victimization Survey conducted by the Alaska Council on Domestic Violence and Sexual Assault in March through May of 2012, 44.6% of adult women (or 3191) surveyed experienced intimate partner violence in their lifetime, with 20.1% (or 1438) experiencing threats of physical violence, and 43.8% (or 3,134) experiencing physical violence. 15.1% (or 1080) experienced forcible sexual assault.

31.     In the fall of 2011, Amanda Macomber accepted a position with the Yupiit School District as a teacher at Akiachak School. Macomber had never visited Akiachak and had no knowledge of the living conditions in the village. Yupiit School District officials travel to other states to solicit teachers to work at the Yupiit School District, and Macomber was hired at a job fair in Oregon. During the recruitment process, Yupiit officials gave Macomber no indication that there was a high incidence of sexual violence targeting female School District Employees.

32.     Before she took the position with Yupiit, Macomber was a resident of Washington. Ms. Macomber accepted a teaching position with Yupiit School District and traveled to the village of Akiachak, where she did not have any friends or family. Yupiit School District owned or rented several houses, which it leased or subleased to incoming teachers employed at Yupiit School. Incoming teachers at Yupiit School had no other choice than to accept the housing selected and rented by Yupiit School District.

33.     The website for the Yupiit school district at www.yupiit.org states, "The Yupiit School District provides housing for the teaching staff. All teacher housing has running hot and cold water, bathroom facilities and electricity and is fully furnished."

34.     After signing her contract in Portland, Oregon, Defendant Langton, then Assistant Superintendent, warned Macomber that she should "be careful" because a teacher in the neighboring village of Tuluksak had been raped in her school district-provided housing the summer of 2011.

35.     Yupiit School District initially provided a house to Macomber with other teacher(s).

36.     For the 2011-2012 school year, Yupiit School District placed Macomber with a roommate in a housing unit referred to as "Unit One" from August to October 2011. In October, Macomber moved with another female roommate into a housing unit called "The Brown House." The Brown House adjoined a swampy area and road near abandoned open trailers and the old abandoned school. Both the trailers and the school were frequented by children, adults, and aggressive dogs.

37.     Ms. Macomber's roommate left the temporary position she filled at winter break, leaving Ms. Macomber alone in the Brown House. During the period in which Ms. Macomber was alone, she felt unsafe due to the condition of the house and harassment she experienced while living there alone.

38.     The Brown House had a lock, but it was inoperable. The key that fit the deadbolt on the Brown House was the same key that opened the Akiachak school. Both the locks failed to stay locked, did not latch correctly, and/or were prone to freezing shut. At least 20 people in

Akiachak had a key to the school, and thereby also had a key to the deadbolt on Macomber's house.

39.     The Brown House was infested with rodents, had non-functioning heat, and had no working lights outside the house.

40.     Once Macomber was in the Brown House without a roommate, community members discovered that Macomber was alone. On an almost nightly basis, strange men would come pound on her door and the outside walls of her house, demanding to be let in and loudly demanding sex. On several occasions, strangers threw large mud balls and other hard objects at the house when Ms. Macomber was inside.

41.     In January of 2012, Macomber was sleeping and awoke to a pounding noise on the outside wall of her bedroom. She looked outside and saw a man leaned over the corner of the house chopping the wooden support beam of the house with an axe. Macomber yelled out the bedroom window at the man telling him to stop and leave. She ran outside and the man had left the premises. Macomber reported the incident to Defendants George and Langton. Langton came and looked at the damage to the house that night.

42.     In response to Macomber's reports of harassment and concerns about her safety, then-Superintendent Howard Diamond placed another teacher in the Brown House as Ms. Macomber's roommate for the remainder of the 2011-2012 school year.

43.     At the close of the 2011-2012 school year, then Superintendent Diamond assured Macomber that the District would make all necessary repairs on the Brown House and assign Macomber a roommate.

44.    For the 2012-2013 school year, Defendant George assigned Macomber a roommate and Defendant Price offered to perform repairs. But security repairs were not performed.

45.    For the 2013-2014 school year, Defendant Price agreed to assign Macomber a roommate, but the proposed roommate declined the position during the summer of 2013. Macomber told Defendant Langton, Defendant Price, and Defendant George that she wouldn't live in the Brown House by herself. Defendant Price offered to house Macomber with two other roommates in another house, but the District failed to repair the alternate house. Ultimately, Defendants Price, Langton, and George assigned Macomber the Brown House without a roommate for the 2013-2014 school year.

46.    Ms. Macomber reported to George, Langton, Price, and previous Superintendent Howard Diamond harassment and a break-in by community members. For the 2013-2014 school year, Yupiit failed to place a roommate with Ms. Macomber or investigate the reports of harassment and a break-in.

47.    On or about August of 2012, Macomber awoke to two male students at Akiachak School, ages approximately 14 and 19, staring at her inside her bedroom. She chased them off. Macomber reported this incident to Steve Craft, then dean of students in charge of student discipline at Akiachak. Yupiit did not report the break-in to the Akiachak VPSOs or to the Alaska State Troopers. Neither Yupiit nor any representative of Yupiit, including Defendant Superintendent Langton or Defendant Principal Price, investigated or addressed the break-in.

48.    Early in the 2013-2014 school year, the sexual harassment became more frequent. Macomber tried several strategies to avoid people knowing that she was in the Brown House.

She created two hiding places in the Brown House, between the washer and dryer that was infested with rodents and another in a closet in the spare bedroom. Macomber also tried leaving the lights on all of the time but realized that she was still visible from the outside of the house so she made a practice of leaving the lights off at all times even when she was at home.

49.     In or about September 2013, Macomber's door was vandalized with crayon and markers. The word "Bitch" was clearly visible. Macomber reported this incident to Defendants Price and Langton. Neither Yupiit, nor any representative of Yupiit, including Defendants Langton, Price, or George, investigated or addressed the graffiti.

50.     On October 27, 2013, Macomber erected a barricade with a two by four and brackets on the inside of the front door of the Brown House. She did so because the locks didn't work and the men who visited at night were trying the doorknobs. Macomber was extremely afraid that the men would succeed in entering the Brown House and assault her.

51.     In or about early December of 2013, Macomber returned home and found her house vandalized, her possessions in disarray. Macomber reported this incident to the School District. Defendant Principal Price inspected the graffiti but told Macomber that she believed it was done by children and not to worry. Yupiit did not report the break-in to the Akiachak VPSOs or to the Alaska State Troopers. Neither Yupiit nor any representative of Yupiit, including Defendant Superintendent Langton or Defendant Principal Price, investigated or addressed the break-in.

52.     On or about mid-December of 2013, at approximately 1 a.m., Macomber was awakened when her bedroom window was broken by a hard object. The object shattered the exterior storm window. Macomber reported this incident to Defendants Price and Langton. Price and Langton inspected the broken window and surrounding area. Akiachak VPSOs also reported to the scene. Yupiit failed to further investigate or repair the broken window. Macomber placed cardboard in her broken bedroom window for insulation, but the window remained broken.

53.     Despite their continuing duty to provide safe, secure habitable housing to Macomber and their notice that Macomber's housing was neither safe, secure, nor habitable, at no time did Yupiit or its representatives investigate, address, or remedy any of the problems.

54.     Superintendent Kim Langton and the Principal Peggie Price knew of the sexual harassment and sexual assault of female teachers because it had happened to Macomber as well as to teacher Clare Robyt , who was raped in the summer of 2011 in Tuluksak and to Lara Ruark, who was the victim of sexual harassment and an attempted break-in by a District employee in Akiak on April 14, 2012. In addition, Yupiit officials knew about the problem because another teacher, Joshua Johnson, wrote a letter to Governor Sean Parnell and the Commissioner of Education, addressing the lack of safe housing for teachers and the sexual assaults of teachers in the Yupiit School District.

55.     Despite Defendants' knowledge that Macomber was being sexually harassed and was fearful that she would be sexually assaulted, the Principal and Superintendent kept no records

of reports by Macomber or other teachers of crimes, sexual harassment, or assault, and never investigated teachers' reports.

56.     Over several months during the 2013-2014 school year, Macomber became increasingly frightened for her safety in the Brown House and begged representatives of the Yupiit School District to give her a roommate or other housing but was not given other housing.

57.     On or about December of 2013 before winter break after her reports of unsafe conditions, inoperable locks, lack of outside lighting, and the trespass and sexual harassment incidents listed herein from 2012-2013, Defendant Price offered Macomber the option of moving to either Unit 1 or to one side of the duplex near her housing unit. Macomber accepted the move, but was not told which unit to move into but was told she could move after Christmas break.

58.     On January 6, 2014, Macomber returned to Akiachak from a trip to Washington State. Macomber learned that her neighbors near the Brown House were moving and that neither the duplex or the recently vacated unit were available. Macomber called Defendant Principal Price, who was still out of state, and told her that she was uncomfortable and unsafe in the Brown House. Price told Macomber that she had no options for Macomber, that Macomber's problem "sounded personal," and to contact Price again when Macomber "came up with a solution." At that time, Macomber told Price she intended to sleep at the School that night because she felt she was in imminent danger in the Brown House.

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 15 of 42

59.     Macomber then contacted Defendant Superintendent of the Yupiit School District, Kim Langton, who was still out of state on winter break, and told him she did not feel safe in the Brown House. Macomber also told Langton that none of the problems with the rodent infestation, inoperable heat, lack of outside lighting, and door locks had been fixed. Although Langton had previously inspected the Brown House on the occasions of the intruder chopping the house with an axe, the break-in, and the burglary and vandalism of the Brown House, Langton denied knowing anything about the sexual harassment, trespasses, rodent infestation, heat, or other problems. Langton failed to provide Macomber with a safe and secure place to stay but promised Macomber that he would work on it "soon." Macomber told Langdon she would be staying at the school until an alternate housing solution was found.

60.     Macomber has epilepsy. Her seizures cause her to lose consciousness and may cause her to injure herself. When Macomber feels that she is about to have a seizure, she lies down to rest in a place clear of objects on which she could injure herself. On the evening of January 6, 2014, Macomber was gathering her possessions at the Brown House when she became aware that she was about to have a seizure. Macomber lay down on a sleeping bag in the hallway, had a seizure, and lost consciousness.

61.     On or about January 7, 2014, Macomber woke up with her shirt pulled over her head and her pants pulled down. She had lacerations all over her chest and felt pain in her genital area. Macomber had been sexually assaulted.

62.     Macomber called the Akiachak VPSOs at the on-call number and other numbers listed on a contact sheet she had received from the school every 15 minutes to report the assault but

there was no answer. After calling the VPSO contact numbers for some period of time, Macomber reached a woman she did not know who told her not to call again.

63.     Macomber then called the Alaska State Troopers. Alaska State Troopers refused to take Macomber's report and told her to call the VPSOs.

64.     Finally, Sharene Craft, née Barr, and Steve Craft, also teachers in Akiachak, reached the Alaska State Troopers and assisted Macomber in reporting the assault. Alaska State Troopers flew Macomber to Bethel where a Sexual Assault Response Team (SART) exam was conducted. The results of the exam indicated that her vaginal area showed signs of forcible assault. Macomber was told to follow up with testing to determine whether she had contracted any sexually transmitted infections from the assault. Alaska State Troopers conducted an investigation at the scene of the crime.

65.     At no time did any representative of Alaska State Troopers follow up regarding the investigation to tell Macomber any findings of the investigation or if the case had been referred for prosecution.  In 2014, undersigned counsel was advised that, pursuant to the Alaska State Trooper policy, Macomber's rape kit was never submitted to the Alaska State Crime Lab for testing "because there were no suspects."The rape kit has consequently never been analyzed to date, nor has it been cross-referenced with the Alaska DNA database.

66.     Macomber sought shelter in a women's shelter in Bethel the week after the assault. She experienced acute emotional distress, inability to eat, and dehydration, for which she returned to the emergency room at Yukon Kuskokwim Health one evening the week after the assault. Macomber followed up in the health clinic at Yukon Kuskokwim Hospital as

requested by emergency personnel, and sought mental health treatment at the walk-in behavioral health clinic associated with YKHC.

67.     Following the assault, Macomber communicated with Superintendent Langton and Assistant Superintendent Diane George and asked that alternative housing be provided to her. Alaska State Trooper Sterling Peele also asked Dr. Langton to provide Macomber with alternative housing, stating that the Brown House was not a safe place for Macomber or any woman to live alone.

68.     At no time did Dr. Langton or any other representative of Yupiit School District communicate to Macomber that alternative housing was available for her. Because no alternative safe housing was available, Macomber stayed in the women's shelter in Bethel for several days.

69.     Because no safe and habitable alternative housing was available, Macomber was unable to return to her teaching position in Akiachak. Macomber traveled to Tacoma, Washington, where she received treatment for trauma. In the Spring of 2014, Macomber was hospitalized. Macomber was diagnosed with Post-Traumatic Stress Disorder stemming from the assault and was prescribed psychotropic medications for nightmares, insomnia, depression, and anxiety. Macomber continued to treat for PTSD with a therapist in Washington State.

70.     On or about May of 2014, at the Shoreline Community Clinic, Dr. Betsy O'Kane examined Macomber and found that she showed symptoms of Herpes Simplex Virus. Macomber was prescribed medications and was tested and tests confirmed that she had Herpes Simplex Virus II. Prior to the assault, Macomber did not have HSV II. Macomber was not

Amanda Macomber v. Yupiit School District, et al
Amanda Macomber v. Yupiit School District, et al
Complaint and Jury Demand

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 18 of 42

sexually active at the time of her rape on January 7, 2015. Macomber was prescribed medication, informed that there is no cure for HSV II, and that the disease could be communicated to intimate partners and children in the future. Subsequently, Macomber took the medication to treat a break-out and had an adverse reaction to the medication that caused acute respiratory distress and required emergency medical attention. Treating medical personnel instructed Macomber to refrain from taking the antiviral medication to treat HSV II breakouts.

71.     Months after the January 7, 2014 Superintendent Langton stated to Macomber, through counsel, that he was unaware that she had been sexually assaulted. At no time did Yupiit or any representative investigate the sexual harassment, break-ins, and sexual assault of Macomber to determine who was responsible.

72.     Langton and Price instructed the teachers at Akiachak School not to discuss Macomber's sexual harassment and assault. Upon information and belief, a female teacher inquired of the District if she was safe as a female teacher. Defendant Price wrote the teacher up for insubordination. Female teachers became afraid for their own safety and were deterred from making grievances by the retaliatory actions of Defendants.

73.     Yupiit failed to provide safe, secure, habitable housing to Macomber that would allow her to return to her position and Akiachak in the 2013-2014 school year.

74.     The School District officials' decision not to investigate the sexual harassment, attempted break-ins, and sexual assault of Macomber violated Title IX and Yupiit School Board Policies.

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 19 of 42

75.     On numerous occasions during the 2013-2014 school year, Macomber advised school officials of the problems and hostility she experienced in her school district provided housing, as detailed herein. She asked the Principal and Superintendent on multiple occasions throughout the 2013-2014 school year, both prior to and following the attack, to make changes to ensure that the harassment of Plaintiff would stop, that she would have a safe environment, and that her work as a teacher could continue without disruption.

76.     School District officials, including Langton and Price, made no changes to the educational environment to prevent future sexual harassment of or discrimination against its female personnel. Yupiit officials' responsive action was limited to approving Macomber's request for family medical leave after she was sexually assaulted and deemed unable to return to work by her medical providers. Each time Macomber documented and reported ongoing problems to School District officials, the School District took no remedial measures, despite having notice that Plaintiff continued to experience sex-based harassment and sexual assault in her school-district provided housing.

77.     School officials never provided any investigative findings to Macomber, and never notified Macomber of any recourse to challenge the sex-based harassment and discrimination she suffered in her employment.

78.     The Alaska State Troopers have failed, to date, to diligently investigate Macomber's sexual assault, to process her rape kit, or to provide any investigative findings to Macomber. DNA testing was particularly important in Macomber's case due to the fact that the sexual

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 20 of 42

assault occurred when she was unconscious due to an epileptic seizure and thus could not identify the perpetrator(s).

79.    Macomber suffered sexual harassment, discrimination and sexual assault that was severe, pervasive, and objectively offensive.

80.    The sex-based harassment, discrimination, and sexual assault, and Defendant Yupiit School District and its officials' failure to investigate, address, or take remedial steps to protect Plaintiff from sexual harassment, discrimination, and sexual assault in its provided housing deprived Plaintiff of the ability to continue teaching at the federally funded educational program at Akiachak School.

81.    School District officials, including Langton and Price, had the duty to take remedial action to correct the sex-based harassment and had actual knowledge that Macomber was subjected to sex-based harassment.

82.    The School District and its Defendants responded with deliberate indifference to the sex-based harassment, discrimination, and finally, to the sexual assault against Macomber. Macomber was sexually assaulted, mutilated, was infected with Herpes Simplex II, and as a result, now also suffers from Complex Post-Traumatic Stress Disorder. She was in fear that if she returned to Akiachak village she would be harassed, sexually assaulted, and/or killed.

83.    Following the January 7, 2014 sexual assault, Macomber developed a stutter, severe panic attacks, difficulty concentrating, difficulty engaging in personal hygiene and other self-care, anxiety, extreme muscle stiffness, insomnia, flashbacks, tremors, sensitivity to sound,

depression, memory problems, lack of self-esteem, hyper-vigilance, fear of intruders, frequent crying, depression, and an inability to work from January 7, 2014 to August of 2014.

**84.**    As a result of the sexual harassment and sexual assault, Macomber has been hospitalized and continues in mental health counseling. Macomber now requires medications for nightmares, insomnia, depression, and anxiety as a means to cope with the Complex PTSD caused by the experiences of prolonged sexual harassment and sexual assault.

**85.**    Due to Yupiit's failure to provide safe housing and Macomber's acute condition following the sexual assault, Macomber was on family medical leave until April of 2014. Macomber applied and interviewed for teaching jobs in Washington and Alaska in the spring of 2014.

**86.**    When, after positive feedback in interviews, Macomber was rejected for more than one teaching job, Macomber became concerned that someone at Yupiit School District was giving her unfavorable references to prospective employers.

**87.**    Due to her increasing suspicions, Macomber hired a commercial service to perform a Professional Reference Check. The service reported that Defendant Langton misrepresented himself as Macomber's immediate supervisor, falsely claimed to have information as to Macomber's classroom performance, and stated that Macomber left her position in the middle of the school year and that he (Langton) did not know why she left.

**88.**    Macomber, through counsel, asked Superintendent Langton to confirm that he was not giving a negative reference to Macomber in retaliation for her taking family medical leave. At

Amanda Macomber v. Yupiit School District, et al
Amanda Macomber v. Yupiit School District, et al
COMPLAINT AND JURY DEMAND
Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 22 of 42

that time, Langton denied any such retaliation and denied that he was aware that Macomber had been sexually assaulted.

89.     Although Langton claimed to be unaware of Macomber's assault, Langton was aware of previous sexual harassment and assaults of female teachers in school district-provided housing, of the ongoing harassment, threatening vandalism, and break-ins Macomber suffered in the Brown House, and of her numerous pleas for a roommate and/or for safe, habitable housing. In January of 2014, Alaska State Trooper Sterling Peele, who conducted the criminal investigation of the sexual assault told Defendant Langton that in order to return to work, that Macomber needed a safe house, and that the Brown House was not safe. Peele also conducted an inspection of the Brown House and conducted interviews with School District officials including Defendant Langton. Contrary to his claims, Langton had actual knowledge of the harassment, safety problems, and of the sexual assault.

90.     Other teachers at Akiachak School and residents of Akiachak and neighboring villages were aware that Macomber was being sexually harassed and was sexually assaulted in the Brown House.

91.     When Yupiit school officials refused to investigate, address, or remedy the ongoing sexual harassment and sexual assault of Macomber or to provide her with safe housing, she was unable to return to her job at Akiachak School to avoid the continuing hostile environment.

92.     By information and belief, the Alaska State Troopers and its agents possessed sufficient information, including Macomber's report of prior crimes in the village against her

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 23 of 42

and the rape kit at issue in this Complaint, to timely identify and apprehend Macomber's assailant(s) thereby preventing subsequent victims from being assaulted.

93.     On this basis, Macomber, through undersigned counsel, contacted the Alaska State Troopers and the Alaska State Crime Lab and inquired as to the status of her rape kit and investigation of the sexual assault. The Alaska State Troopers told undersigned counsel that Macomber's rape kit was never submitted to the Alaska State Crime Lab for testing and that there had been no progress on the investigation since the initial report.

94.     When Macomber submitted her bodily fluids and DNA evidence from her body as part of the sexual assault exam, Macomber reasonably believed in good faith that the Alaska State Troopers had a methodology in place that was effective to investigate and prevent rapes, and would use the rape kits that had been submitted in confidence. She reasonably believed, based upon the Trooper's representation, that the rape kit she submitted would be put to special use to identify the attacker in question, and she was led to believe that there was a system and procedure in place to inventory, safe keep, and appropriately prioritize her rape kit.

95.     In the fall of 2014, Macomber learned through public media that there was a backlog of rape kits in the State of Alaska and an unknown number of rape kits, including hers, had never been submitted for testing by local law enforcement agencies. At this time she became aware that her constitutional protections had been violated and that the Alaska State Troopers had acted negligently and with deliberate indifference in their investigation of her assault.

96.     When the Alaska State Troopers failed to investigate Macomber's sexual assault and failed to diligently submit the rape kit sample of her personal bodily fluids and DNA evidence

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 24 of 42

from her assailant(s) to the Alaska State Crime Lab, Macomber was unable to safely return to her position in Akiachak.

97.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer psychological damage, emotional distress, loss of standing in her community, damage to her professional reputation. Her future relationships have been negatively affected, and she has acquired an incurable, sexually transmittable infection.

98.     Macomber's damages are directly attributable to the violation of her constitutional rights and the negligent actions and omissions by, and the deliberate indifference of, the Yupiit School District, the Alaska State Troopers, and their respective employees and agents.

99.     From January 7, 2014 to the present, Macomber's assailants have remained at large. On information and belief, Defendant Alaska State Troopers and its agents possessed information including the rape kit at issue in this Complaint and the State DNA database to identify and apprehend Macomber's assailant(s), thereby preventing subsequent victims from being assaulted. This includes all information from Ms. Macomber's victimization as outlined herein.

100.    Macomber has required hospitalization, ongoing counseling, and medication to address her depression, anxiety, and Post-Traumatic Stress Disorder caused by Defendants.

101.    Macomber was deprived of the ability to teach and live with a reasonable sense of safety and security in her teaching position at Akiachak School.

102.    Macomber was further damaged by missed opportunities to develop in her career as an educator and her future earning capabilities have been damaged by Defendant School District

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 25 of 42

and its officials' conduct, and the resulting sexual harassment, discrimination, and sexual assault.

## V. CAUSES OF ACTION AGAINST DEFENDANT YUPIIT SCHOOL DISTRICT, ITS OFFICIALS, AGENTS AND EMPLOYEES PEGGIE PRICE, KIM LANGTON, AND DIANE GEORGE IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

### COUNT I
#### NEGLIGENCE
#### AS TO DEFENDANT YUPIIT SCHOOL DISTRICT

103.    Plaintiff incorporates Paragraphs 1-102 as though fully set forth herein.

104.    Defendant Yupiit School District provided housing to Amanda Macomber, a female teacher, in the village of Akiachak, and thus, had a duty of care to provide safe, secure, habitable housing. Yupiit knew or should have known that the housing that it provided to Macomber was neither safe, secure, nor habitable and that she was subject to ongoing sexual harassment, burglaries, vandalism, and threats to her life and safety in the housing provided to her.

106.    When it provided Macomber with a house that was neither safe, secure, nor habitable, Yupiit breached its duty of care toward Macomber.

107.    As a direct and proximate result of Yupiit's negligence, Plaintiff suffered damages including sexual assault, physical injuries, pain, suffering, anguish, contraction of Herpes Simplex II, and post-traumatic stress disorder, lost wages, diminished future earning capabilities, and loss of enjoyment of life in an amount of damages to be determined at trial.

**COUNT II**
GROSS NEGLIGENCE
AS TO DEFENDANT YUPIIT SCHOOL DISTRICT

Paragraphs 1-107 are incorporated by reference as if fully set forth herein.

108.    Defendant Yupiit School District had a duty to use reasonable care in providing Amanda Macomber with safe habitable housing.

109.    Yupiit knew or should have known that the housing that it provided to Macomber was neither safe, secure, nor habitable.

110.    When it provided Macomber with a house that was neither safe, secure, or habitable, Yupiit breached its duty of care toward Macomber. When Yupiit failed to provide Macomber with a roommate or to remedy the problems with the inoperative locks, the inoperable deadbolt that matched the lock on the school, the lack of heat, the rodent infestation, sexual harassment, break-ins, even after Macomber reported repeated trespass and harassment and invasion of her house, Yupiit acted or failed to act with gross negligence, a more than ordinary inadvertence or inattention.

111.    As a direct and proximate result of Yupiit's gross negligence, Plaintiff suffered damages including sexual assault, physical injuries, pain, suffering, anguish, contraction of Herpes Simplex II, Post-traumatic Stress Disorder, and lost wages, and loss of enjoyment of life, in an amount of damages to be determined at trial.

**COUNT III**
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
AS TO DEFENDANT YUPIIT SCHOOL DISTRICT

112.    Paragraphs 1-112 are incorporated by reference as though fully set forth herein.

113.    Yupiit School District engaged in outrageous conduct by failing to maintain safe, secure, habitable housing for Amanda Macomber and by ignoring her repeated pleas to give her a roommate, fix the locks, heat, and rodent infestation, and to protect her from nightly trespassers until she was sexually assaulted in the house Yupiit provided to her.

114.    Yupiit knew, should have known, or was in reckless disregard of the probability of their actions and omissions causing Macomber emotional distress.

115.    As a result of Yupiit's actions and omissions, Macomber suffered severe and extreme emotional distress in an amount to be proven at trial; and

116.    Yupiit's outrageous conduct was the actual and proximate cause of Macomber's emotional distress.

**COUNT IV**
VIOLATION OF TITLE IX
AS TO DEFENDANT YUPIIT SCHOOL DISTRICT
(20 U.S.C. § 1681, *et seq*.)
(The School District's Deliberate Indifference to Alleged Sexual Harassment)

117.    Paragraphs 1 through 116 are incorporated by reference as though fully set forth herein.

118.    The sex-based harassment and assault described herein was so severe, pervasive, and objectively offensive that it deprived Plaintiff of the ability to work at Akiachak School.

119.    The Defendant School District created and/or subjected Plaintiff to sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

  a)  Plaintiff was a member of a protected class;

b) Defendant subjected her to sex discrimination in the form of sexual harassment and sexual assault in school district provided housing;

c) Defendant subjected her to harassment and sexual assault based on her sex;

d) Defendant Yupiit's lack of policies and procedures and failure to properly investigate and/or address the sexual harassment and assault or to secure safe housing that would allow her to return to her employment after the sexual assault forced her to leave her employment.

e) Defendant School District and its officials had actual knowledge of the sexual harassment and sexual assault and the need for Plaintiff to have secure housing to return to her employment and refused to investigate and take remedial actions to protect her from further assault and harassment in a timely manner and consistent with its own policy and federal and state law.

f) The Defendant School District's refusal to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being sexually assaulted and being unable to return to work as a teacher, being subjected to discrimination in her employment in violation of Title IX.

g) Defendant School District failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, burglary, and sexual assault, and instead acted with deliberate indifference toward Plaintiff.

h) Defendant School District persisted in its actions and inaction even after it had actual knowledge of the harms suffered by Plaintiff.

i) Defendant School District engaged in a pattern and practice of behavior that subjected Macomber and other female teachers to sexual harassment and sexual assault, and discouraged female teachers who had been sexually harassed and assaulted from seeking investigation.

j) This policy and/or practice constituted disparate treatment of females and had a disparate impact on females.

120. Plaintiff has suffered emotional distress, psychological damage, damage to her standing in her profession and future earning capabilities, and damage to her relationships caused by the sexual harassment and discrimination fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under Title IX.

**COUNT V**
VIOLATION OF TITLE IX
AS TO DEFENDANT YUPIIT SCHOOL DISTRICT
(20 U.S.C. § 1681, *et seq*.)
(Retaliation by Withholding Protections Otherwise Conferred by Title IX)

121. Paragraphs one through 120 are incorporated by reference as though fully set forth herein.

122. After Macomber was sexually harassed and assaulted in her School District provided housing, Defendant School District failed to take any remedial steps to resolve the unsafe state of her housing, the harassment, burglaries, and sexual assault and instead, acted with deliberate indifference toward Plaintiff.

123. Once Plaintiff requested and was approved for Family Medical Leave and could not return to Akiachak due to the district's refusal to provide her with safe housing, Principal

Price and Superintendent Langton retaliated against her by declining to investigate the matter or to otherwise comply with their responsibilities as mandated by Title IX, and by falsely stating to prospective employers that the District did not know why Macomber left her position in the middle of the school year and otherwise made false negative statements about her within the scope of his employment, which hindered her opportunity for reemployment.

**COUNT VII**

RETALIATION FOR EXERCISE OF THE RIGHT TO FAMILY MEDICAL LEAVE
AGAINST DEFENDANT YUPIIT SCHOOL DISTRICT AND DEFENDANT LANGTON IN
HIS INDIVIDUAL AND OFFICIAL CAPACITIES
(29 U.S.C. § 2615(a) et. seq.)

124. Paragraphs 1-123 are hereby incorporated by reference as though fully set forth herein.

125. After being raped on January 7, 2014, Macomber applied for and Defendant Yupiit granted family medical leave due to having been sexually assaulted and suffering from post-traumatic stress disorder.

126. When Defendant Yupiit School District, by and through Defendant Langton, gave a false negative reference for Macomber to prospective employers in the Spring of 2014, stating that he had no knowledge of why she left her position in the middle of the year, these statements hindered her opportunity for reemployment.

127. Defendants Yupiit and Langton, violated 29 U.S.C. § 2615(a) when they retaliated against Macomber for having exercised her right to take family medical leave by making false, negative statements to prospective employers that hindered Macomber's opportunities for employment.

## COUNT VII
### *MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE
### AS TO RESPONSE TO SEXUAL ASSAULT
### AS TO DEFENDANT YUPIIT SCHOOL DISTRICT (42 U.S.C. § 1983), DEFENDANT LANGTON, PRICE, AND GEORGE

128.    Paragraphs 1-127 are hereby incorporated by reference as though fully set forth herein.

129.    At all times relevant, Defendants Langton, Price, and George, were "state actors" working for Yupiit District, a federally funded school system.

130.    Defendants Langton, Price, and George acted under "color of law" when refusing to respond, investigate, or protect Plaintiff from sexual harassment and assault on the premises of school district-provided housing.

131.    Defendants Langton, Price, and George failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

132.    Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to employment free from sexual harassment and discrimination.

133.    Defendants Langton, Price, and George knew or should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

134.    Defendants Langton, Price, and George each violated Plaintiff's right to equal protection and due process by:

a.     Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual harassment and violence;

b.     Failing to take prompt and effective steps to end the sexual harassment and violence, prevent its recurrence, and address its effects, whether or not the sexual harassment and violence is the subject of a criminal investigation;

c.     Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d.     Failing to provide a grievance procedure for teachers to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights.

135.    Defendant Yupiit School District violated Plaintiff's Fourteenth Amendment right to equal protection and due process by failing to properly train and supervise its administrators as to these mandated investigative requirements.

136.    These policies and/or practices constituted disparate treatment of females and had a disparate impact on female teachers.

137.    Defendants' actions and lack of actions were the proximate cause of Plaintiff's physical injuries, emotional distress and psychological damage, lost wages and future earning capabilities, infection with an incurable disease.  Her character and standing in her profession in the community have suffered from the sexual harassment and discrimination fostered by Defendant

Amanda Macomber v. Yupiit School District, et al
Amanda Macomber v. Yupiit School District, et al
Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 33 of 42
Complaint and Jury Demand

School District's deliberate indifference to her right to equal protection and due process under the Fourteenth Amendment.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and specifically against Defendants Yupiit School District and its officials Price, Langton, and George as follows:

A.      Compensatory damages for Plaintiff's physical injuries, psychological and emotional distress and damages, loss of standing in her profession and community, damage to her reputation, and her unreimbursed out of pocket expenses incurred in response to these circumstances;

B.      Punitive damages, where authorized by law;

C.      Injunctive relief requiring Defendant School District to take effective steps to prevent sex-based discrimination and harassment of teachers, including sexual assault, in its administrator training programs; to fully investigate conduct that may constitute sex-based harassment and /or sexual assault; to appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and to mitigate the effects of sexual harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

D.      Statutory interest;

E.      Costs; and

F.      Attorneys' fees.

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 34 of 42

## VI. CAUSES OF ACTION AGAINST DEFENDANT ALASKA STATE TROOPERS DIRECTOR COL. JAMES COCKRELL AND TROOPER STERLING PEELE, IN THEIR OFFICIAL CAPACITIES.

### COUNT VIII
Violation of 42 U.S.C. Sec. 1983 Due Process Violation
Against Defendant Colonel James Cockrell and Trooper Sterling Peele, in their official capacities

138. The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in paragraphs 1-137 as though fully set forth herein.

139. This action is brought on behalf of Plaintiff Amanda Macomber pursuant to 42 U.S.C. § 1983, against the Defendants.

140. At all times relevant herein, Defendants acted under the color of state law.

141. At all times relevant herein, Defendants knew that Macomber, a victim of sexual assault, had provided evidence of sexual assault that was collected by Defendants in sexual assault evidence kits, and that Defendants did not take steps to investigate the crime and were not sending the sexual assault kit for testing.

142. Defendants had a duty to submit the sexual assault kit for testing.

143. At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 35 of 42

     a.     Defendants violated Plaintiff's Due Process interest in the processing of the DNA samples she provided to Defendants in their investigation, and her right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest suspect(s);

     b.     Defendants violated Plaintiff's Due Process Clause interests by failing to investigate, submit sexual assault evidence kits, or arrest suspect(s).

144.    Defendants with deliberate indifference, failed to train its officers as to the rights of person with whom the troopers come into contact, including but not limited to Plaintiff.

145.    Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual assault, and/or fostered an environment to exist and continue in which a victim is sexually assaulted; and/or is in fear of sexual assault.

146.    Defendant violated the Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

147.    The constitutional injury inflicted by Defendant was caused by a person with final policymaking authority at the Defendants.

148.    Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

149.    The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to declaratory and injunctive relief for a declaration that Defendants

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 36 of 42

Cockrell and Peele, in their official capacities, violated Macomber's right to due process and to order Defendants Cockrell and Peele to submit the rape kit taken from Macomber's body for testing and follow through with investigation of her sexual assault.

## COUNT IX
Violation of 42 U.S.C. Sec. 1983 Equal Protection Violation
Against AST Director James Cockrell and AST Sterling Peele in their official capacities

150.   The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in paragraphs 1-149 as if fully set forth herein.

151.        This action is brought on behalf of Plaintiff Amanda Macomber.

152.        This action is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

153.        At all times relevant herein, Defendants acted under the color of state law.

154.   At all times relevant herein, Defendants knew that Amanda Macomber, a victim of sexual assault, had provided evidence of sexual assault that had been placed in sexual assault evidence kits, and that Defendants were not taking steps to investigate properly the allegations and were not sending the sexual assault kits for testing.

155.   At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to: Defendants violated Plaintiff's Due Process Clause interest in the processing of DNA samples taken from her body into Defendant Alaska State Troopers custody, and her right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest her assailant(s).

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 37 of 42

156.    Defendants, with deliberate indifference, failed to train its Troopers as to the rights of person with whom the Troopers come into contact, including but not limited to Plaintiff.

157.    Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual assault, and/or fostered an environment to exist and continue in which a victim is sexually assaulted; and/or is in fear of sexual assault.

158.        Defendants' conduct was motivated by gender.

159.        Defendants' conduct was intentional and due to the Plaintiff's female gender.

160.    Defendants violated the Plaintiff's civil rights by having a policy of not submitting rape kits for testing when "there is no suspect" that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

161.    The constitutional injury inflicted by Defendants was caused by a person with final policymaking authority at the Defendants.

162.    Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

163.    The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to Plaintiff is entitled to declaratory and injunctive relief for a declaration that Defendants Cockrell and Peele, in their official capacities, violated Macomber's right to equal protection of law and to order Defendants Cockrell and Peele to submit the rape kit

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 38 of 42

taken from Macomber's body for testing and follow through with investigation of her sexual

assault.

## COUNT X
### Violation of 42 U.S.C. § 1983: Fourth Amendment Violation
Against Defendants Colonel James Cockrell and Sterling Peele in their official capacities

164.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations

contained in paragraphs 1-163 as if set forth in full herein.

165.        This action is brought on behalf of Amanda Macomber.

166.        This action is brought pursuant to 42 U.S.C. § 1983, against the Defendants.

167.        At all times relevant herein, Defendants acted under the color of state law.

168.    At all times relevant herein, Defendants knew that Plaintiff, a victim of sexual assault,

had provided evidence of sexual assault that had been placed in a sexual assault evidence kit,

and that Defendants were not taking steps to investigate properly the allegations and were not

sending the sexual assault kits for testing.

169.        Defendants had a duty to submit the sexual assault kit for testing.

170.    Defendants had a duty to intervene and protect the Plaintiff from the perpetrators of

the sexual assault and other crimes against her.

171.    At all times relevant herein, Defendants with deliberate indifference, intentionally,

willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or

privileges secured by the constitution, including but not limited to: Defendants violated

Plaintiff's Due Process Clause interest in the processing of the DNA samples, which she had

provided to Defendants, and her right to redress in the courts, by failing to investigate, submit her sexual assault evidence kit, or arrest the suspect(s).

172.    Defendants, with deliberate indifference, failed to train its police offices as to the rights of person with whom the Troopers come into contact, including but not limited to Plaintiff.

173.    Defendants' deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual assault and abuse, and/or fostered an environment to exist and continue in which a victim is sexually assaulted; and/or is in fear of sexual assault.

174.    Defendants violated the Plaintiff's by having a policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

175.    After being a victim of a sexual assault Defendants requested Plaintiff to submit personal body fluids and other material to be collected in a sexual assault evidence kit.

176.    Defendants told Plaintiff that the purpose of this request was so that test could be conducted in order to aid law enforcement in the capture of the perpetrators of the sexual assault. This representation was the reason Plaintiff agreed to submit to the examination.

177.    After attaining the body fluids and other evidence, Defendants failed to conduct the promised test.

AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
AMANDA MACOMBER v. YUPIIT SCHOOL DISTRICT, ET AL
COMPLAINT AND JURY DEMAND

Case 3:15-cv-00254-JWS   Document 1   Filed 12/18/15   Page 40 of 42

178.    Based upon information and belief, at the time Defendants requested the collection of said body fluids and other evidence, Defendants knew that said materials were not to be tested.

179.    The collection of body fluids and other evidence, which was not tested, constitutes an unlawful search and seizure in violation of the Fourth Amendment on the part of Defendants.

180.    The constitutional injury inflicted by Defendant was caused by a person with final policymaking authority.

181.    Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

182.    The above-described conduct of Defendants constitutes a violation of 42 U.S.C §1983. Plaintiff is entitled to a declaratory judgment that Defendants violated her right to be free of unlawful search and seizure under the Fourth Amendment and order defendants to submit Macomber's rape kit for testing and to follow through with investigation of her sexual assault.

    **WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against Colonel James Cockrell and Sterling Peele in their official capacities as follows:

    A.    Declaratory Judgment finding that Defendants Cockrell and Peele, in their official capacities, by failing to submit Macomber's rape kit for testing or to otherwise investigate her sexual assault, violated Macomber's rights to due process, equal

protection, and to be free from unreasonable searches and seizures guaranteed by the United States Constitution.

B.      Injunctive relief requiring Defendant Alaska State Troopers to take effective steps to submit Macomber's DNA evidence and "rape kit"; fully investigate her case including creation of a DNA profile and cross-referencing with state DNA database.

C.      Statutory interest;

D.      Costs; and

E.      Reasonable attorney fees.


## DEMAND FOR JURY TRIAL

Plaintiff, Amanda Macomber, by and through her attorney, Caitlin Shortell, demands a trial by jury in all causes of action so triable in this matter.

Dated: December 17, 2015         SHORTELL GARDNER & AHEARN LLC

/s/ Caitlin Shortell
_____
Caitlin Shortell (Alaska Bar # 0405027)
Shortell Gardner & Ahearn LLC
Counsel for Plaintiff Amanda Macomber
310 K Street Suite 200
Anchorage, AK 99501